Before GRAUPNER, TRAMMELL, and PHILLIPS.

This is an appeal from the determination of a deficiency in income tax for the year 1919 amounting to $2,904.18. The deficiency results from a reduction by the Commissioner of the March 1, 1913, value of real estate, sold during the taxable year, below that reported by the taxpayer.

### FINDINGS OF FACT.

The taxpayer during 1911 purchased real estate located on the southwest corner of Homan Avenue and Roosevelt Road, in the City of Chicago. It consisted of a lot having 75 feet frontage on Roosevelt Road and 167 feet on Homan Avenue, running to an alley, on which was located a three-story building, consisting of a basement, seven 4-room apartments, six 6-room apartments, eleven 5-room apartments, and two stores. The taxpayer purchased this property at a price which can not be fixed definitely but which was between $73,000 and $76,000 from the original builder, who was at that time in straightened circumstances and who sacrificed it for cash to save his other holdings.

The taxpayer, during the year 1919, sold the property for $110,-000. Some changes in the building had been made during the time the taxpayer owned it. The taxpayer estimated the March 1, 1913, value of the property to be $110,000 in his income-tax return for 1919.

The Commissioner determined the March 1, 1913, value of the property to be $100,000, and, from the evidence before us, we find that amount to be correct.

### DECISION.

The determination of the Commissioner is approved.

---

## APPEAL OF MRS. T. C. THOMPSON, EXECUTRIX OF THE ESTATE OF T. C. THOMPSON.

Docket No. 5280.   Submitted December 5, 1925.   Decided February 19, 1926.

*Oscar W. Underwood, Jr.,* and *H. C. Kilpatrick, Esqs.,* for the taxpayer.
*Frank T. Horner, Esq.,* for the Commissioner.

Before GRAUPNER, TRAMMELL, and PHILLIPS.

This is an appeal from the determination of a deficiency in estate tax under the Revenue Act of 1921, amounting to $5,343.21. The

deficiency results from the increase by the Commissioner in the value of stock owned by decedent in the Buck Creek Cotton Mills, a corporation.

### FINDINGS OF FACT.

The taxpayer is the executrix, qualified and acting under the last will and testament of T. C. Thompson, deceased, of Siluria, Ala., who died October 5, 1922. T. C. Thompson, at his death, owned 909.8 shares of a total of 1,182.8 shares issued and outstanding of the common stock of the Buck Creek Cotton Mills. He owned 88.5 shares of a total of 643 shares issued and outstanding of the second preferred stock, and he owned 964 shares of a total of 3,000 shares issued and outstanding of the first preferred stock of the same corporation. Each of these shares had a par value of $100.

The Buck Creek Cotton Mills is a corporation organized under the laws of the State of Alabama, and is engaged in the manufacture of cotton cloth at Siluria, Ala. The second preferred stock of the above-named corporation provided for payments of 3 per cent semiannual dividends, payable on the 1st day of January and July of each year. Such dividends are noncumulative and have been paid each year from 1920. The first preferred stock of the above-named corporation provided for cumulative dividends at the rate of 3 per cent semiannually, payable on the 1st day of January and July of each year, which have been paid each year from 1916. The charter of the corporation prohibited the payment of any dividends upon the common stock until after the redemption or retirement of all of the first preferred stock, and limited the dividends on the common stock thereafter to 8 per cent per annum until the retirement of all of the second preferred stock. No dividends have ever been paid on the common stock. Following out the provisions of the charter, the company has retired $110,000 of the preferred stock since the reorganization of the company in 1911.

For the nine years ending September 30, 1922, the corporation's average annual earnings amounted to $47,783.39. The earnings of the company, as far back as the present records of the company go, after deducting income and profits taxes paid for each of such years, were as follows:

|  |  | Amount. |
|---|---|---|
| 1914 | (loss) | $27,034.36 |
| 1915 | (gain) | 19,696.53 |
| 1916 | (gain) | 52,825.73 |
| 1917 | (gain) | 90,555.37 |
| 1918 | (gain) | 116,189.09 |
| 1919 | (gain) | 85,461.04 |
| 1920 | (gain) | 171,428.52 |
| 1921 | (loss) | 64,403.61 |
| 1922 | (loss) | 14,667.74 |

At the time of the death of T. C. Thompson, the cotton-mill industry was in an extremely depressed condition, wide fluctuations in the cotton market rendering it difficult to determine a manufacturing or a buying policy. While some improvement over the depth of the depression was at that time noted, the future was somewhat uncertain. At that time the company, the books of which were kept upon a fiscal year basis ending September 30, had closed its second consecutive year of losses.

The assets and liabilities of the Buck Creek Cotton Mills from September 30, 1918, to and including September 30, 1922, were as follows:

*Balance Sheets Buck Creek Cotton Mills, Siluria, Ala.*

|  | Year ending Sept. 30, 1918. | Year ending Sept. 30, 1919. | Year ending Sept. 30, 1920. | Year ending Sept. 30, 1921. | Year ending Sept. 30, 1922. |
|---|---|---|---|---|---|
| **ASSETS.** | | | | | |
| Cash | $42,069.69 | $4,239.58 | $80,386.96 | $23,228.37 | $34,947.64 |
| U. S. Liberty loan bonds | 2,500.00 | 5,000.00 | 5,000.00 | 5,000.00 | |
| Victory loan bonds | | 75,000.00 | | | |
| War savings certificates | 834.00 | 834.00 | 834.00 | 834.00 | 834.00 |
| Accounts receivable | 105,018.60 | 81,014.86 | 31,616.68 | 85,512.94 | 69,173.01 |
| Inventory cotton | 98,250.00 | 59,640.00 | 18,750.00 | 59,400.00 | 111,030.00 |
| Finished products | 61,215.57 | 49,340.42 | 396,383.80 | 138,946.79 | 72,637.30 |
| Lumber | | | 7,001.41 | 6,668.63 | |
| Plant, equipment, machinery, land, etc | 757,844.59 | 775,662.24 | 789,449.89 | 812,664.51 | 838,507.94 |
| Total | 1,067,732.45 | 1,050,731.10 | 1,329,422.74 | 1,132,255.24 | 1,127,129.89 |
| **LIABILITIES** | | | | | |
| Bonds | 6,000.00 | | | | |
| Notes payable | 46,700.00 | | | | |
| Reserve for depreciation | 175,713.67 | 259,224.27 | 298,696.76 | 338,610.14 | 380,535.53 |
| Reserve for income and excess profits taxes | | 46,550.67 | 101,368.63 | | |
| Capital stock, first preferred | 310,000.00 | 310,000.00 | 310,000.00 | 310,000.00 | 310,000.00 |
| Capital stock, second preferred | 64,300.00 | 64,300.00 | 64,300.00 | 64,300.00 | 64,300.00 |
| Capital stock, common | 118,280.00 | 118,280.00 | 118,280.00 | 118,280.00 | 118,280.00 |
| Surplus | 346,738.78 | 252,376.16 | 436,777.35 | 301,065.10 | 264,014.36 |
| Total | 1,067,732.45 | 1,050,731.10 | 1,329,422.74 | 1,132,255.24 | 1,127,129.89 |

In 1921, about a year prior to decedent's death, 16 shares of common stock of the Buck Creek Cotton Mills were sold at $100 per share, and 10 shares of second preferred stock were sold at $80 per share to one of the officers of the corporation. There were no sales of first preferred shares of stock within recent years.

The Commissioner's valuation of the stock of decedent at the time of his death on October 5, 1922, was as follows:

|  | Share. |
|---|---|
| Common stock | $234 |
| First preferred stock | 85 |
| Second preferred stock | 75 |

The taxpayer claims that the value of the stock of decedent at the time of his death on October 5, 1922, was as follows:

|  | Share. |
|---|---|
| Common stock | $55 |
| First preferred stock | 75 |
| Second preferred stock | 65 |

The value of the common stock owned by decedent at the time of his death on October 5, 1922, was $200 per share. The value of the first preferred stock was $85 per share, and that of the second preferred stock was $75 per share.

### DECISION.

The deficiency should be computed in accordance with the foregoing findings of fact. Final determination will be made on 15 days' notice, under Rule 50.

On reference to the Board, GREEN dissents.

---

### APPEAL OF CHARLES OWEN.[1]

Docket No. 2997. Submitted October 20, 1925. Decided February 19, 1926.

> Under the facts of this appeal, *held*, that the distribution to its stockholders, by the Osage Natural Gas Co., of 2,000 shares of the capital stock of the Owen-Osage of West Virginia, owned by it, as a step in or preliminary to the merger of the two corporations, resulted in taxable income to the stockholders of the Osage Natural Gas Co. to the extent that the distribution was made from the earnings of that company.

*Charles J. Kappler, Esq., Walter E. Barton, Esq., W. L. Clark, C. P. A.,* and *H. A. Wells, C. P. A.,* for the taxpayers.
*M. N. Fisher, Esq.,* for the Commissioner.

Before MARQUETTE, GREEN, and LOVE.

These appeals are from determinations of deficiencies in income tax for the year 1919, as follows:

| | | | |
|---|---|---|---|
| Charles Owen | $58,045.92 | Charles M. Casey | $38.79 |
| Stephen H. Watts | 499.95 | C. A. Hancock | 406.96 |
| R. O. Horton | 370.06 | A. S. White | 80.26 |
| R. C. Watts | 240.00 | James F. Casey | 33.00 |
| Charles J. Kappler | 96.26 | E. H. Hancock | 220.00 |
| Pauline W. Owen | 2,132.04 | R. T. Watts, Jr | 187.20 |
| Charles E. Heald | 1,763.92 | H. O. Miller | 113.18 |
| C. M. Guggenheimer | 176.00 | C. G. Shannon | 327.70 |

They involve the same facts and present the same question, to wit, whether or not the taxpayers, in the year 1919, realized dividends

---

[1] The following appeals were heard with the above-entitled appeal and are decided herewith: Appeals of Stephen H. Watts, No. 1958; R. O. Horton, No. 2659; R. C. Watts, No. 2703; Charles J. Kappler, No. 2998; Pauline Owen, No. 3034; Charles E. Heald, No. 3054; C. M. Guggenheimer, No. 3055; Charles M. Casey, No. 3056; C. A. Hancock, No. 3057; A. S. White, No. 3058; James F. Casey, No. 3059; E. H. Hancock, No. 3060; R. T. Watts, Jr., No. 3061; H. O Miller, No. 7730; and C. G. Shannon, No. 7731.